**CINCINNATI ELECTRONICS CORPORATION,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–3866C.**

United States Court of Federal Claims.

Dec. 16, 1994.

Michael A. Gordon, Rockville, MD, for petitioner; Donald C. Holmes, of counsel.

Michael S. Kane, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Terrence S. Hartman, Asst. Director, for defendant; Lt. Col. Leo B. Wegemer, U.S. Air Force, of counsel.

### *OPINION*

ROBINSON, Judge:

This matter is before the court on defendant's August 30, 1991, and August 12, 1992, motions to dismiss. Defendant's first motion seeks to dismiss portions of Count I and the entirety of Count II of plaintiff's original complaint, filed on October 19, 1990, for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). Defendant's first motion also requests dismissal of Count IV of plaintiff's amended complaint, filed August 16, 1991. Defendant's second motion to dismiss seeks dismissal of Count III of plaintiff's amended complaint. Plaintiff opposes defendant's motions. Oral argument was held on February 17, 1994, and supplemental briefing was ordered. Supplemental briefing was completed on March 10, 1994. After careful consideration of all of the parties' arguments, the court will grant defendant's first motion in part, deny it in part, and deny defendant's second motion. The court's reasoning is set forth below.

### *Factual Background*

The United States Department of the Air Force (Air Force), Electronic Systems Division (E.S.D.), awarded Contract No. F19628–85–C–0086 to plaintiff on July 2, 1985, for the development of an airborne radio system that would employ frequency hopping to protect against enemy communications jamming techniques. Plaintiff was originally scheduled to deliver the radios within twenty-five months. In May 1986, the parties extended the delivery date by another six months. On October 5, 1987, by administrative change order, the parties again lengthened the completion time to 47.5 months with a delivery date of June 17, 1989.

Plaintiff started developing the radio system, and, eventually, flight testing began. On February 21, 1989, E.S.D. informed plaintiff that the Air Force had stopped flight tests, citing problems in the existing design

radios and concerns for pilot safety. E.S.D. issued a cure notice to plaintiff on February 24, 1989, based upon alleged deficiencies, including failure of flight testing and lack of reliability growth testing. Plaintiff responded to the cure notice on March 20, 1989, and argued that the design specifications were defective; that the June 17, 1989, delivery date was no longer valid; that any alleged deficiencies in plaintiff's performance were excused; and that plaintiff had been and was continuing to diligently perform its work under the contract.

On April 14, 1989, E.S.D. issued a notice to show cause why the contract should not be terminated for default. Plaintiff replied to E.S.D.'s show-cause notice on April 24, 1989. On May 4, 1989, E.S.D. suspended plaintiff's progress payments, citing the same problems set forth in its cure notice of February 24, 1989, and its show-cause notice of April 24, 1989. Plaintiff supplemented its response of March 20, 1989, and its reply of April 24, 1989, on May 16, 1989, and June 5, 1989. The Air Force issued a Stop Work Order on July 27, 1989.

On October 24, 1989, the contracting officer (C.O.) issued a final decision terminating the contract for default. On April 3, 1990, the C.O. issued a second final decision demanding the return of approximately $11,-000,000 in progress payments. By letter dated August 31, 1990 (August 1990 claim), plaintiff submitted to the contracting officer a consolidated package of eighteen certified claims for equitable adjustment and for the price of work that was allegedly constructively accepted.[1]

On October 19, 1990, slightly less than one year after the final decision by the contracting officer terminating plaintiff for default but less than sixty days after the submission of plaintiff's August 1990 claim, plaintiff filed its original complaint in this court. That complaint contains two counts. The first count seeks relief from the allegedly improper default termination and from defendant's claim for return of progress payments.[2] The second count seeks monetary damages for breach of the contract.

On December 6, 1990, forty-eight days after the filing of its original complaint, plaintiff submitted a properly certified termination for convenience claim (December 1990 claim) to the C.O. which also incorporated the money damages for equitable adjustment set forth in plaintiff's August 1990 claim.

On February 4, 1991, the C.O. responded that plaintiff's December 1990 claim for termination for convenience costs and money damages was premature because the claim was before the court. As a result, the C.O. stated that he would not issue a final decision until the court rendered its decision in this case.

On August 16, 1991, plaintiff filed its amended complaint, containing two additional counts. The first claim of the amended complaint (Count III) requests an equitable adjustment pursuant to the changes clause of the contract. The second claim of the amended complaint (Count IV) is for termination for convenience costs.

### Contentions of the Parties

Defendant contends that Count I of plaintiff's original complaint includes a claim for conversion of the termination for default to a termination for convenience of the Government, a claim for termination for convenience costs, and, in Count II, a claim for common law breach of contract damages. Defendant

---

1. By letter dated November 1, 1990, the C.O. informed plaintiff that he had received plaintiff's August 1990 claim and anticipated issuing a final decision by January 25, 1991. By letter dated January 8, 1991, the C.O. informed plaintiff that his decision would be issued no later than May 15, 1991. Finally, by letter dated May 14, 1991, the C.O. informed plaintiff that no final decision would be issued until after the Defense Contract Audit Agency (DCAA) audited plaintiff's claim. However, defendant's counsel later advised plaintiff that the C.O. would not issue a final decision on the August 1990 claim until this court had decided plaintiff's challenge to the default termination.

2. With respect to Count I, there is no dispute over the court's jurisdiction to adjudicate plaintiff's challenge to the default termination and defendant's demand for return of the progress payments. However, because of certain language in Count I, there is a dispute over whether plaintiff also seeks termination for convenience costs in this count.

contends that the court lacks jurisdiction over these claims because they were uncertified and were never presented to the C.O. for a final decision.

Defendant also contends that this court lacks jurisdiction over Counts III and IV of plaintiff's amended complaint, filed August 16, 1991, because the claims asserted in the amended complaint are the same as those in Counts I and II of the original complaint. Thus, despite the fact that plaintiff certified its claims contained in Counts III and IV and presented them to the C.O. for a decision, defendant maintains that the C.O. was divested of authority to consider them because these exact claims were already before the court by virtue of the prior complaint. Consequently, defendant avers that plaintiff's claims in its amended complaint are incapable of being considered by the C.O. until the court grants defendant's motions to dismiss part of Count I and all of Counts II, III, and IV.

Defendant next argues that since the C.O. cannot issue a final decision on the claims in Counts III and IV, and since the claims in the original complaint were uncertified, plaintiff has not met the jurisdictional prerequisites of the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988) (CDA). In sum, defendant contends that the court lacks jurisdiction over all of plaintiff's claims except those portions of Count I that challenge the propriety of the default termination and defendant's demand for the return of progress payments; therefore, defendant argues, part of Count I and all of Counts II, III, and IV must be dismissed.

Plaintiff contends that Count I of its original complaint, properly construed, did not claim termination for convenience costs; rather, those costs were first sought in Count IV of its amended complaint. Plaintiff also asserts that Count II of its original complaint, properly construed, did not seek monetary damages for breach of contract and that Count III of its amended complaint asserts, for the first time in this litigation, its claims for monetary damages pursuant to the changes clause of the contract. Plaintiff further states that the particular language in Counts I and II upon which defendant relies

for its arguments in this regard were simply requests for rulings that were incidental to having defendant's claims overturned. Plaintiff explains that since no *affirmative* claims for monetary damages or termination for convenience costs were present in the original complaint, the C.O. was never divested of his authority to consider the certified claims presented to him after the commencement of this action. According to plaintiff, once the C.O. concluded in his February 4, 1991, letter that he would not issue a final decision on plaintiff's claims for termination for convenience costs and money damages, plaintiff could treat those claims as denied and properly subject to adjudication by the court.

## DISCUSSION

■ Under the rules of this court, the court's evaluation of a motion to dismiss for lack of jurisdiction is usually limited to the pleadings, and the unchallenged facts alleged in the complaint are deemed to be true and are construed in a light most favorable to plaintiff. RCFC 12(b)(1); *see, e.g., Cupey Bajo Nursing Home, Inc. v. United States,* 23 Cl.Ct. 406, 411 (1991). However, when jurisdiction is questioned, it is plaintiff's burden to establish the court's jurisdiction over the subject matter. *See Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986).

■ Pursuant to the statutory scheme at 28 U.S.C. §§ 516–520 (1988), the United States Department of Justice has exclusive authority to supervise and conduct all litigation on behalf of the United States before this court. *Sharman Co. v. United States,* 2 F.3d 1564, 1571 (Fed.Cir.1993); *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 465, 534 F.2d 889, 901 (1976). Accordingly, if a claim is in litigation before the court, the contracting officer is without authority to issue a final decision on the claim. *Sharman,* 2 F.3d at 1571; *Boeing Co. v. United States,* 31 Fed.Cl. 289, 292 (1994); *Sipco Servs. & Marine, Inc. v. United States,* 30 Fed.Cl. 478, 485 (1994); *Durable Metal Prods., Inc. v. United States,* 21 Cl.Ct. 41, 46 (1990). Likewise, no denial may be deemed

under 41 U.S.C. § 605(c)(5).[3] *Sipco*, 30 Fed. Cl. at 485.

Under the CDA, a final decision by the contracting officer, whatever the form, is a prerequisite for placing claims before the court; without a final decision, the court's jurisdiction over the case never vests. *United States v. W.H. Moseley Co.*, 730 F.2d 1472, 1475 (Fed.Cir.1984); *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981), *aff'd*, 230 Ct.Cl. 884 (1982); *Gunn–Williams v. United States*, 6 Cl.Ct. 820, 823 (1984).

### 1. *Count I and Count IV.*

Defendant asserts that because the termination for convenience claim contained in Count IV of plaintiff's amended complaint, filed on August 16, 1991, was already the subject of Count I of plaintiff's original complaint, filed on October 19, 1990, the C.O. was without authority to issue a final decision on the claim when it was presented to him in plaintiff's December 1990 claim; thus, no denial of this claim, actual or deemed, could take place. Therefore, defendant maintains that this court lacks jurisdiction over Count IV, the termination for convenience claim.

Defendant's argument relies upon particular language in plaintiff's original complaint which, defendant contends, demonstrates that plaintiff's termination for convenience claim was before the court and a part of this litigation; therefore, the C.O. could not issue a final decision on plaintiff's December 1990 claim.

Paragraph 505, contained in Count I of plaintiff's complaint states:

Since the Air Force's purported default termination was based upon nondelivery of 'specification complaint' radios on June 17, 1989 and 'endangering performance' of delivery of specification compliant radios by any other reasonable delivery date, neither of which allegations justify a default [under] the facts here, the default is legally improper. Therefore, at a minimum, the termination for default must be converted

to a termination for the convenience of the Government.

Complaint at 87. The prayer for relief in plaintiff's original complaint states, in part, that plaintiff seeks:

4. A ruling that the improper termination for default is converted to a termination for the convenience of the Government.

5. A ruling that [plaintiff] is entitled to recovery of its reasonable costs incurred under the Termination for Convenience clause of the Contract.

Complaint at 91.

Plaintiff insists that the cited language of its original complaint was not intended to—and in fact did not—put its termination for convenience claim into litigation so as to withdraw the C.O.'s authority to issue a final decision on plaintiff's December 1990 claim.

According to *Sharman*, the C.O. retains his authority to issue a final decision on a claim unless that same claim is also in litigation. *Sharman*, 2 F.3d at 1571. " '[C]laim' refers to 'each claim under the CDA for money that is one part of a divisible case.' " *Sharman*, 2 F.3d at 1569 (quoting *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed.Cir.1985)). Therefore, the issue becomes whether, under the *Sharman* test, plaintiff stated a "claim" for termination for convenience costs in Count I of its original complaint thereby divesting the C.O. of authority to consider such a claim.

The court begins its analysis by recognizing what is not in Count I of the original complaint. Plaintiff did not request money damages for its termination for convenience costs; it simply sought a ruling that the default termination be converted to a termination for convenience. Also, in the "Jurisdiction" section of its complaint, plaintiff did not allege that the C.O. had issued a final decision on a claim for termination for convenience costs. Complaint at 4–5. Plaintiff knew, of course, that there was no such final decision. Plaintiff does plead, however, in that section of the complaint, as jurisdictional

---

**3.** That section states that "[a]ny failure by the contracting officer to issue a decision on a contract claim within [sixty days of receipt of a submitted claim] will be deemed to be a decision by the contracting officer denying the claim.... 41 U.S.C. § 605(c)(5).

bases, the C.O.'s final decisions terminating plaintiff for default and demanding the return of approximately $11,000,000 in progress payments. Plaintiff also did not specify, in its original complaint, a sum certain for its termination for convenience damages. Although the CDA does not define "claim," it is well-settled that under the CDA a claim must be "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain...." FAR 33.201; *Essex Electro Eng'rs v. United States*, 960 F.2d 1576, 1580 (Fed.Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). Plaintiff's assertion in its original complaint that it should have been terminated for convenience was not a "claim" for termination for convenience costs but simply a request for declaratory relief incidental to its challenge to the default termination under the default clause of the contract. *See* FAR 52.249–8 (If default termination is found to be improper, payments to plaintiff shall be determined in accordance with the termination for convenience clause.); *see also* FAR 49.401.

◼ A claim for termination for convenience costs is not the same claim as a claim seeking to overturn a default termination. *Boeing*, 31 Fed.Cl. at 292–93. This is so, even though the existence of a decision terminating a contractor for default is dissonant with the contractor's claim that it is entitled to termination for convenience costs. *See Boeing*, 31 Fed.Cl. at 295 (discussing this conflict in connection with the dispute requirement for a "claim"). Here, Count I of plaintiff's complaint, properly construed, only challenges the default termination and defendant's demand for the return of progress payments. Accordingly, the court holds that plaintiff's termination for convenience claim was not placed before the court in Count I of plaintiff's original complaint. To hold otherwise would be to penalize plaintiff for language which made no demand but merely anticipated a closely related claim and, at the same time, abridge the mandate of *Hughes Aircraft*, that the power over matters before the court, vested in defendant by 28 U.S.C. §§ 516–520, not be extended to "other matters which, albeit related, are not yet so

pending." *Hughes Aircraft*, 209 Ct.Cl. at 465, 534 F.2d at 901.

◼ As stated, plaintiff's termination for convenience claim was first placed before the court in plaintiff's amended complaint. Therefore, the court must next determine whether it has jurisdiction over the claim as set forth in the amended complaint. In accordance with 41 U.S.C. § 605, two hurdles exist to properly placing CDA claims within the court's jurisdiction under 41 U.S.C. § 609. First, with respect to each claim, the contractor must file a written and properly certified claim with the C.O. Second, the C.O. must have rendered a final decision on that claim. *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed.Cir.1985); *Paragon Energy Corp.*, 227 Ct.Cl. at 183–84, 645 F.2d at 971; *Mendenhall v. United States*, 20 Cl.Ct. 78, 82 (1990).

Section 605(c) of the CDA discusses the issuance of a final decision:

(1) A contracting officer shall issue a decision on any submitted claim of $50,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period.

\* \* \* \* \* \*

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

\* \* \* \* \* \*

(5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.

41 U.S.C. § 605(c).

Since the court has concluded that plaintiff's termination for convenience claim was not part of Count I of plaintiff's original complaint, jurisdiction over plaintiff's December 1990 claim must be assessed as of the

date of plaintiff's amended complaint, August 16, 1991—the time the claim "became part of the lawsuit." *Sharman,* 2 F.3d at 1570. Here, plaintiff filed its December 1990 claim with the C.O. on December 6, 1990. Plaintiff did not place this claim in litigation until August 16, 1991, 253 days after it submitted its claim to the C.O. and 197 days after the C.O.'s letter of February 4, 1991, which stated—erroneously, in the court's view—that he would not issue a final decision while this case was pending. Therefore, on August 16, 1991, plaintiff could properly treat its December 1990 claim as denied pursuant to 41 U.S.C. § 605(c)(5) and place the claim within this court's jurisdiction. This was done in Count IV of plaintiff's amended complaint. Accordingly, the court denies defendant's motion to dismiss as to Count IV of the amended complaint.[4]

### 2. *Count III.*

Defendant also seeks dismissal of Count III of plaintiff's amended complaint. Count III is based on plaintiff's August 1990 claim for equitable adjustment. Defendant asserts that this claim is the same as the claim plaintiff presented in its original complaint for breach of contract damages. Defendant relies on the decision in *Nolan Brothers, Inc. v. United States,* 186 Ct.Cl. 602, 405 F.2d 1250 (1969), for the proposition that a claim for equitable adjustment is subsumed in a claim for termination for convenience costs. According to defendant, that decision also holds that a claim for equitable adjustment is substantially the same as a claim for breach of contract damages. Thus, defendant argues, these claims are the same under the test articulated in *Sharman,* and, because claims for breach of contract damages and termination for convenience costs were already before the court, the C.O. was without authority to consider them. Thus, no deemed denial of plaintiff's claim could take place. Therefore, defendant concludes, this court has no jurisdiction over that claim.

The court has already determined, however, that plaintiff's original complaint did not present a claim for termination for convenience costs. Without that foundation, defendant's arguments, which are premised solely upon this assertion, are of no avail. Plaintiff, however, did assert in its original complaint a general claim for unspecified breach of contract damages. Indeed, plaintiff has failed to satisfactorily explain any purpose of Count II other than to assert a claim for damages for breach of contract.

Count II of plaintiff's complaint states:

THE AIR FORCE'S ACTIONS IN ADMINISTERING THE CONTRACT ARE MATERIAL [BREACHES] OF CONTRACT

A. *Cardinal Change*

\* \* \* \* \* \*

509. The above Government's actions materially changed the fundamental character of the Contract to which the parties agreed and effected a cardinal change and material breach, entitling [plaintiff] to stop work and to recover common law breach damages. Accordingly, the default termination was improper.

B. *ESD Contract Actions Were Improperly Motivated By Funding Availability*

\* \* \* \* \* \*

521. These material breaches of contract excused [plaintiff's] further performance and vitiated the purported default termination, entitling [plaintiff] to common law breach damages.

Complaint at 88–90. The prayer for relief in plaintiff's complaint states:

WHEREFORE, [plaintiff] demands judgment against Defendant as follows:

\* \* \* \* \* \*

---

4. The remainder of this opinion addresses plaintiff's requests for equitable adjustment and common law breach of contract damages. Both parties have presented arguments regarding the court's jurisdiction over these claims. The resolution of these issues may ultimately be moot; if plaintiff prevails on its claim for termination for convenience costs, the other remedies requested are subsumed in the termination for convenience costs claim. *Nolan Bros., Inc. v. United States,* 186 Ct.Cl. 602, 606, 405 F.2d 1250, 1254 (1969); *PBI Elec. Corp. v. United States,* 17 Cl.Ct. 128, 130 (1989); *Ralcon, Inc. v. United States,* 13 Cl.Ct. 294, 296 (1987).

2. A ruling that [plaintiff] is entitled to recover common law damages for such bad faith actions, and/or material [breaches]. Complaint at 91.

■ Plaintiff insists that its claim for breach of contract damages was not at issue because the prayer for relief only requested a "ruling" that it was entitled to the damages. Although the court, in its discussion of plaintiff's alleged termination for convenience claim in Count I, construed similar language as only requesting declaratory relief, the nature of the claim and context of the language here fail to permit a similar finding. Even though the court, in this instance, agrees with defendant's assessment of plaintiff's complaint—that plaintiff's complaint asserts a claim for common law breach of contract damages—it disagrees with the consequence of that finding. A careful reading of the decision in *Nolan Brothers*, upon which defendant relies heavily, reveals that for purposes of 28 U.S.C. §§ 516–520, it does not stand for the proposition that a claim for equitable adjustment, sought pursuant to the changes clause of a contract, is the same as a claim for common law breach of contract damages; rather, it stands for the opposite conclusion. In *Nolan*, a contract had been terminated for convenience, and the plaintiff was before the United States Court of Claims pursuing a claim for breach of contract damages, in addition to a claim for termination for convenience costs. The court refused to allow the plaintiff to pursue a claim for breach of contract damages, since the contract was terminated for the convenience of the Government. The court emphasized that terminating a contract for convenience was a safe haven for the Government to avoid paying the contractor unearned profits which it might recover under a breach of contract theory. The *Nolan* court

did observe that recovery of the cost of work actually performed would be substantially the same "whether the case be governed by the convenience-termination article, an 'equitable adjustment' under some other contract clause, or the common law standard." *Nolan Bros.*, 186 Ct.Cl. at 607 n. 3, 405 F.2d at 1254 n. 3. Such a discussion, however, in view of the fact that a claim for breach of contract also includes recovery for *unearned* profit, only highlights the distinctiveness of these claims under the CDA. *See Sharman,* 2 F.3d at 1569 (" '[C]laim' refers to 'each claim under the CDA for money that is one part of a divisible case.' ") (quoting *Joseph Morton Co. v. United States,* 757 F.2d at 1281); *Sipco Servs. & Marine, Inc. v. United States,* 30 Fed.Cl. 478, 485 (1994) ("[U]nder the CDA, each claim, even if part of the same case, must be considered separately by the contracting officer and a suit filed as to one claim does not divest the contracting officer of authority to consider other claims."). Under *Sharman,* claims are the same if they "alleg[e] entitlement to the same money based on the same partial performance, only under a different legal label." 2 F.3d at 1571. Such a finding cannot be made where, as here, one claim seeks recovery of money which cannot be had under the other.

■ This conclusion, as is the court's decision with regard to Counts I and IV, is also consistent with the recent decision by the court in *Boeing Co. v. United States,* 31 Fed.Cl. 289 (1994).[5] In *Boeing,* the court determined that *Sharman* stands for the proposition "that a CO cannot address a CDA claim when that same CDA claim is in litigation." *Boeing,* 31 Fed.Cl. at 292. The statutory scheme of 28 U.S.C. §§ 516–520 "is properly limited to a concern for noninterference with claims in a CDA sense." *Id.* Such an interpretation is dictated by *Hughes Air-*

---

5. As well as being instructive in interpreting *Sharman,* the court in *Boeing* was bound by the law of the case doctrine to follow an unpublished decision by the United States Court of Appeals for the Federal Circuit, *Boeing Co. v. United States,* 991 F.2d 811, 1993 WL 76280 (Fed.Cir. 1993). The court was, however, able to reconcile the two decisions by the appellate court. *See Boeing,* 31 Fed.Cl. at 292–93 (The rule of law announced in *Sharman* is "a CO cannot address a CDA claim when that same CDA claim is in

litigation.... The above-expressed understanding of *Sharman* is compatible with the rule of law announced for this case by the unpublished decision: that contractor claims seeking termination for convenience costs and equitable adjustments are not pending before the court merely because a complaint has previously been filed seeking reversal of a termination for default and demand for return of progress payments, even if the various claims and the complaint involve common questions of law and fact.").

*craft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889 (1976), where the Court of Claims ruled that because the statutory scheme of 28 U.S.C. §§ 516–520 is "broadly inclusive," it must be "narrowly construed."[6] *Hughes Aircraft,* 209 Ct.Cl. at 465, 534 F.2d at 901. Thus, the court must interpret 28 U.S.C. §§ 516–520 in accordance with the definition of "claim" under the CDA.

 As noted, plaintiff's August 1990 claim was filed with the C.O. on August 31, 1990. Since the court has concluded that this claim was not included in plaintiff's original complaint, jurisdiction over that claim must be assessed as of the date of plaintiff's amended complaint, August 16, 1991—the time the claim "became part of the lawsuit." *Sharman,* 2 F.3d at 1570. By August 16, 1991, 350 days had lapsed since plaintiff submitted its claim to the C.O., and 100 days had passed since the C.O.'s letter of May 14, 1991, which stated that he would not issue a final decision until an audit of plaintiff's claim could be completed. Subsequently, plaintiff was informed that no decision would issue while this case was pending. Therefore, on August 16, 1991, plaintiff could properly treat its August 1990 claim as denied pursuant to 41 U.S.C. § 605(c)(5) and place the claim within this court's jurisdiction.

### 3. *Count II.*

 The court has determined that a claim for common law breach of contract damages was never submitted to the C.O. for a final decision. Thus, to the extent Count II of plaintiff's complaint seeks such damages, it is critically flawed. Accordingly, it must be dismissed for lack of subject matter jurisdiction.

### 4. *Stay of the proceedings and remand to the contracting officer.*

 This court has the discretion, pursuant to 41 U.S.C. § 605(c)(5) to stay this case to allow the C.O. to issue final decisions on plaintiff's August 1990 and December 1990 claims. Although both parties, for different reasons, resist the suggestion of staying the proceedings, the court nevertheless believes such a stay is appropriate. The principal reason the C.O. never issued final decisions on these claims was his or the Department of Justice's erroneous determination that the C.O. was without the authority to do so. Given the substantial overlap between plaintiff's claims and the C.O.'s prior determination that the contract be terminated for default, which inherently requires consideration of a termination for convenience of the Government, the C.O. should be able to swiftly render a final decision on plaintiff's claims, allowing this litigation to proceed. *See* FAR 49.402–3(a) (C.O. must decide "which type of termination action to take (i.e., default, convenience, or no-cost cancellation)...."). Such a stay is consistent with the court's finding that it has subject matter jurisdiction over these claims.

### *CONCLUSION*

For the reasons stated, the court holds that plaintiff's original complaint did not divest the C.O. of authority to issue a final

---

**6.** The court is bound by the majority opinion in *Sharman.* Accordingly, the court's decision follows the holding in that opinion; however, it is also consistent with the concerns of the dissent. The dissent cautioned against construing 28 U.S.C. §§ 516–520 too broadly and urged:

> Aside from the fact that this case involved separate claims by different parties, I believe that, in order to place a claim in litigation so as to bar further action by the contracting officer, a contractor must at least plead facts sufficient to establish jurisdiction in the court. This court's holdings—recognized by the majority—that a valid contracting officer's final decision is a jurisdictional prerequisite to bringing suit under the CDA dictate this requirement. Sound policy also dictates this requirement. Otherwise, a contractor/litigant

could tie the hands of the contracting officer at any time by merely filing in court a jurisdictionally defective suit. In short, I do not believe that a contracting officer can be divested of authority to issue a final decision on a government claim by the filing of a jurisdictionally defective suit on a separate contractor claim. *Sharman,* 2 F.3d at 1575–76 (Schall, J., dissenting). Although *Sharman* concerned a defective claim by the plaintiff which was an impediment to a government claim, Judge Schall's interpretation of 28 U.S.C. §§ 516–520, because it focuses on the jurisdictional sufficiency of the original claim rather than the party making the claim, could be applied to the present case where defendant argues that plaintiff has foiled *itself* by filing a jurisdictionally defective claim.

decision on plaintiff's August 1990 and December 1990 claims. Plaintiff's original complaint, properly construed, only made three claims, plaintiff's challenge to the default termination, plaintiff's challenge to defendant's demand for the return of progress payments, and plaintiff's request for common law breach of contract damages. The claims contained in plaintiff's amended complaint are properly deemed "denied" pursuant to 41 U.S.C. § 605(c). Count II of plaintiff's original complaint is dismissed to the extent that it seeks damages for common law breach of contract. To the extent the factual allegations in Count II are relevant to plaintiff's remaining claims, they, as well as defendant's responses to the allegations, contained in its answer, remain before the court. The court finds it appropriate to stay further proceedings in this case and remand plaintiff's August 1990 and December 1990 claims to the C.O. for a final decision pursuant to 41 U.S.C. § 605(c)(5), with the hope that such action will aid in a prompt resolution of plaintiff's claims.

Defendant' shall file a status report within 30 days of this Opinion, and every 30 days thereafter, informing the court of the C.O.'s progress in considering plaintiff's claims.