McDONNELL DOUGLAS CORPORATION and General Dynamics Corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 91–1204C.

United States Court of Federal Claims.

Jan. 22, 1997.

See also, 37 Fed.Cl. 270.

Caryl A. Potter, III, Sonnenschein, Nath & Rosenthal, Washington, D.C., for plaintiff McDonnell Douglas Corporation, with whom was John W. Walbran, McDonnell Douglas Corporation, of counsel; Herbert L. Fenster and David A. Churchill, McKenna & Cuneo, Washington, D.C., for plaintiff General Dynamics Corporation.

Bryant G. Snee, United States Department of Justice, Washington, D.C., for defendant, with whom was George P. Williams, Office of the General Counsel, Department of the Navy, of counsel.

## OPINION AND ORDER

HODGES, Judge.

Plaintiffs McDonnell Douglas Corporation and General Dynamics Corporation contracted with the Navy in 1988 to develop a carrier-based Stealth aircraft known as the A–12. Under the A–12 full scale engineering and development contract, plaintiffs agreed to produce eight aircraft from June 1990 through January 1991. The final aircraft delivered would serve as the prototype from which the Navy would procure an entire fleet.

The contractors experienced numerous problems during performance of the contract. They had not made a delivery by September 1990, and they asked that the contract be restructured. The Navy responded by issuing a cure notice on December 17, 1990. Plaintiffs certified claims for equitable adjustments totaling approximately $1.401 billion on December 31, but the contracting officer terminated plaintiffs for default in January 1991.

The Government demanded return of unliquidated progress payments in the amount of $1.352 billion. The demand was disputed and the parties signed a Deferment Agreement permitting the contractors to retain the unliquidated progress payments pending action by the court.

We ruled that the decision to terminate for default, coupled with the execution of the Deferment Agreement and demand letter, constituted a final decision by the contracting officer demanding return of unliquidated progress payments. *See McDonnell Douglas Corp. v. United States,* 25 Cl.Ct. 342, 349–51 (1992) (ruling that the court has jurisdiction to review plaintiffs' and defendant's initial claims). Plaintiffs' December 1990 requests for equitable adjustments matured into a "claim" by their February 1991 letter to the contracting officer requesting a final decision. *See id.* at 348 n. 1.[1] The contracting officer did not issue a final decision.

In April 1991, the contractors advised the Navy that they anticipated a successful appeal of the contracting officer's final decision to terminate for default, and were preparing a termination for convenience settlement proposal. In response, the contracting officer stated that a termination settlement proposal would not be appropriate because he considered his decision to terminate for default to be "proper and correct." He saw "no grounds for the submission of a termination settlement...." M.S. Mutty Ltr. to Pltfs. (Apr. 30, 1991).

Plaintiffs filed suit in this court on June 7, 1991 pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–13. The complaint demanded equitable adjustments and asked the court to convert defendant's termination for default to a termination for convenience of the Government. Plaintiffs also requested an award of incurred performance costs plus a reasonable profit and settlement expenses. They did not request a sum certain.

The contractors submitted a certified termination for convenience settlement proposal and claim for $1.286 billion to the contracting officer on June 26, 1991, then amended it in July.[2] The claim requested termination for convenience damages authorized under the contract.

The contractors stated in the claim that if the contracting officer continued to hold the position that they could not submit a termination settlement proposal, he should notify them within ten days. Otherwise, he should issue a final decision within 60 days, or state when such a decision would be executed.

The contracting officer responded in August that the contractors' certifications were defective, and that he would not consider any matters submitted to him after June 7, 1991. He stated that all of plaintiffs' claims were before this court, and he had no authority to consider them.

The Government moved to dismiss plaintiffs' original complaint in August 1991 for

---

1. A "claim" must be either a routine submission from a contracting party for payment "in dispute" or a non-routine submission that is: (1) a written demand or assertion; (2) seeking as a matter of right; (3) the payment of money in a sum certain. FAR 33.201

2. The amended submission included a claim for payment of all incurred performance costs based on invalidity of fixed-price contract, and a claim for wrongful withholding of progress payments. The first claim re-certified a portion of the con-

tractors' claim submitted in December 1990. Re-certification was not necessary; we ruled that the December 1990 claim was properly certified. *See McDonnell Douglas Corp. v. United States,* 25 Cl.Ct. 342 (1992).

We note that the post-complaint claim for wrongful withholding of progress payments may not be ripe for review, though counsel have not argued this issue. We invite the parties to advise the court whether further attention to this matter is warranted.

lack of jurisdiction.[3] We asserted jurisdiction over plaintiffs' and defendant's initial claims, *McDonnell Douglas Corp. v. United States*, 25 Cl.Ct. 342 (1992), and requested additional briefing on whether this court had jurisdiction to review the post-complaint claims. In September, we granted plaintiffs leave to amend their complaint to include the claim for termination for convenience costs.

Defendant argues (1) that the contracting officer had no authority to rule on plaintiffs' claim because 28 U.S.C. § 516 transferred jurisdiction to the Department of Justice once the original complaint was filed; and (2) that the claim was premature because a contractor may not perfect a termination for convenience claim unless and until a court finds that the termination for default was improper. We do not agree with either argument, and have assumed jurisdiction over the post-complaint claims at issue.

## I.

For reasons stated in a prior opinion, we converted the termination for default to a termination for convenience of the Government. *McDonnell Douglas Corp. v. United States*, 35 Fed.Cl. 358 (1996). This Opinion and Order addresses the procedure for resolving a termination for convenience settlement claim after the court converts an improper termination for default.

The Federal Acquisition Regulation prescribes two methods to resolve a termination for convenience cost claim, and each requires the TCO to take affirmative action.[4] Once the notice of termination is issued, the contractor submits a settlement proposal for the TCO's consideration. FAR 49.104(h). Upon receipt, the TCO must attempt to expedite settlement by negotiation. FAR 49.105(a). "When possible, the TCO should negotiate a fair and prompt settlement with the contractor." FAR 49.103.

If he is unable to negotiate a settlement, the TCO must make a unilateral determination of the contractor's entitlement. FAR

49.109–7; *see* John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 1097–98 (3d ed. 1994). The TCO shall "settle a settlement proposal by determination only when it cannot be settled by agreement." FAR 49.103.

Upon receipt of a properly certified CDA claim, the contracting officer must render his decision within 60 days or notify the claimant when a final decision will be forthcoming. 41 U.S.C. § 605(c)(2). If no decision or notification is made within the required period, the contracting officer is deemed to have denied the contractor's claim. *Id.* § 605(c)(5). All denials may be appealed to an agency board of contract appeals or this court. *Id.* §§ 606–07, 609(a).

However, a court may direct the contracting officer to make a final decision before it hears the case. *Id.* § 605(c)(5). "Section 605(c)(5) is clearly a discretionary option for this court." *Durable Metal Prods., Inc. v. United States*, 21 Cl.Ct. 41, 47 (1990). When the contracting officer declines to rule on a claim, therefore, we may direct the contracting officer to act, or we may act in the contracting officer's stead as the circumstances warrant.

## II.

The Government's position is that a final decision by the contracting officer is impossible "after the subject matter of the claim is already in litigation," and therefore cannot be deemed denied for the purpose of jurisdiction pursuant to 41 U.S.C. § 609(a). That is, a contracting officer cannot choose to deny a claim by the passage of 60 days because a decision to deny or approve a claim in litigation is the sole concern of the Department of Justice.

28 U.S.C. § 516 gives the Attorney General "exclusive and plenary power to supervise and conduct all litigation" involving the United States. *Hughes Aircraft Co. v. United States*, 209 Ct.Cl. 446, 465, 534 F.2d

---

3. Defendant renewed its motion to dismiss plaintiffs' termination for convenience damages in January 1996.

4. Although the FAR refers only to the Terminating Contracting Officer's responsibility to resolve a termination for convenience, we have effectively assumed the TCO's role in this case.

889 (1976).[5] "Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation. That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim." *Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed.Cir. 1993) (citations omitted), *overruled on other grounds, Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995) (en banc).

Defendant contends that § 516 transferred control of plaintiffs' termination for convenience recovery to the Department of Justice when plaintiffs requested incurred performance costs plus a reasonable profit and settlement expenses in their original complaint.[6] This request was in effect a demand for termination for convenience costs as set forth in the contract's Termination for Convenience Clause, FAR 52.249–2, according to the Government. In other words, defendant asserts that plaintiffs' damages claim became part of the litigation when plaintiffs filed suit on June 7. Section 516 left the contracting officer powerless to act on plaintiffs' post-complaint termination for convenience cost claim. The contracting officer did not necessarily disagree with the termination for convenience claim—he simply believed that he did not have the authority to settle it. There could have been no deemed denial upon which we could assert jurisdiction. *See Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed.Cir.1996) (explaining Government's argument that a deemed denial is invalid when the contracting officer does not have authority to issue a decision).

■ *Sharman Co. v. United States* holds that the "contracting officer cannot address a CDA claim when that *same CDA claim* is in litigation." *Boeing Co. v. United States*, 31

Fed.Cl. 289, 292 (1994) (emphasis added); *Case*, 88 F.3d at 1011 (distinguishing critical fact in *Sharman* that contractor's initial claim and Government's subsequent counterclaim were "mirror images" of same claim); *Alaska Pulp Corp. v. United States*, 34 Fed. Cl. 100, 103 (1995) ("*Sharman* establishes that the touchstone for the operation of the statute is whether *the particular CDA claim* is already in litigation by the filing of the complaint.") (emphasis added). Thus, when a claim is properly before the court, the contracting officer has no authority to decide *that same claim*. *Sharman* activates § 516 to deprive the contracting officer of authority only if the post-complaint claim submitted to the contracting officer is identical to the pre-complaint claim "in litigation."

■ Termination for default is a government claim, and termination for convenience is a separate contractor claim. 41 U.S.C. § 605(a); *Malone v. United States*, 849 F.2d 1441, 1443 (Fed.Cir.1988). The fact that the two claims involve overlapping issues of law and fact is not determinative. *Boeing*, 31 Fed.Cl. at 292–93. The Department of Justice's authority under § 516 does not reach "other matters which, albeit related, are not yet so pending." *Hughes Aircraft*, 209 Ct.Cl. at 465, 534 F.2d 889.

Plaintiffs' post-complaint claims were not "in litigation" until the complaint was amended in September 1991. The contracting officer was not hindered by § 516; he was authorized to issue a final decision on plaintiffs' post-complaint claim for termination for convenience costs because that claim was not pending before the court.[7]

The court in *Boeing Co. v. United States* held that it had jurisdiction to decide plain-

---

5. "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516.

6. Plaintiffs' original complaint requested relief in part as follows:
   E. That this court enter a judgment converting the termination for default to a termination for the convenience of the government.

. . . .
   H. That plaintiffs be awarded all of their incurred performance costs plus a reasonable profit, plus settlement expenses.

7. The propriety of the contracting officer's decisions to terminate for default and deny plaintiffs' request for equitable adjustments was pending before the court. *See McDonnell Douglas Corp. v. United States*, 25 Cl.Ct. 342 (1992). Plaintiffs' attendant request in the original complaint for performance costs and profits was incidental.

tiff's post-complaint termination for convenience claim in a similar situation. *Boeing Co. v. United States,* 31 Fed.Cl. 289 (1994), on remand from the Federal Circuit, *Boeing Co. v. United States,* 991 F.2d 811 (table case), 1993 WL 76280 (Fed.Cir.). In that case, the Government terminated Boeing's contract for default and made a demand for the return of progress payments. The contractor sued in this court (No. 91–1077) to overturn the termination for default and to avoid returning progress payments. It later submitted a termination for convenience settlement claim and a delay claim to the contracting officer. The contracting officer did not act on the claims. Plaintiff deemed the claims denied and attempted to incorporate them into its complaint by amendment. The court denied leave to amend. Plaintiff filed a second complaint (No. 92–14), but the court dismissed both actions. The court held that plaintiff's new claims in 92–14 were related to claims pending before the court in 91–1077.[8] The contracting officer's 60–day period to render a decision under the CDA was tolled because the claims were the "subject of litigation" in 91–1077.

The Government moved to dismiss the post-complaint termination for convenience and delay claims, arguing that under 28 U.S.C. § 516 "[t]he contracting officer had no authority to consider those claims due to their being virtually identical to the [earlier] complaint. . . ." *Boeing Co. v. United States,* 26 Cl.Ct. 529, 532 (1992). The court granted the Government's motion.

The Federal Circuit remanded and directed that plaintiff be allowed to amend its complaint to include its post-complaint claims:

> [C]ontractor claims seeking termination for convenience costs and equitable adjustments are not pending before the court merely because a complaint has previously been filed seeking reversal of a termination for default and demand for return of progress payments, even if the various

claims and the complaint involve common questions of law and fact.

*Boeing,* 31 Fed.Cl. at 292–93 (reciting the Federal Circuit's instructions). With this guidance, the trial court determined that the post-complaint claims were properly before the court.

The contractor's original complaint in *Cincinnati Electronics Corp. v. United States,* 32 Fed.Cl. 496 (1994) sought conversion of an improper termination for default to one for convenience of the Government. It also sought "a ruling that [plaintiff] is entitled to recovery of its reasonable costs incurred under the Termination for Convenience clause of the Contract." *Id.* at 501. The Government argued that plaintiff requested a conversion of the default termination *and* a cost recovery authorized by the termination for convenience clause of the contract. Therefore, § 516 divested the contracting officer of authority to consider plaintiff's post-complaint termination for convenience cost recovery proposal.

The court disagreed. "Plaintiff did not request money damages for its termination for convenience costs; it simply sought a ruling that the termination be converted to a termination for convenience." *Id.* The complaint merely sought a declaratory judgment vacating the Government's termination for default. It did not activate § 516 to prevent the contracting officer from considering a separate termination for convenience claim. Nor did it seek review of an earlier deemed denial or decision of the contracting officer denying plaintiff's termination for convenience cost claim.

The Government argues here that reliance on *Cincinnati Electronics* is misplaced because the original complaint in that case did not include "a 'claim' for termination for convenience costs but simply a request for declaratory relief incidental to its challenge to the default termination under the default clause of the contract." *Id.* We find no

---

8. Case No. 91–1077 later was dismissed in *Boeing Co. v. United States,* 25 Cl.Ct. 441 (1992), for lack of jurisdiction over the termination for default claim. The challenge to the termination for default without an accompanying claim for money was filed and dismissed before our jurisdiction

was amended in 1992 to encompass such claims. *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, 4519 (codified at 28 U.S.C. § 1491). *See also Boeing,* 31 Fed.Cl. at 294.

reason to treat plaintiffs' original complaint differently.

Plaintiffs' original complaint in this case sought declaratory relief from the Government's default termination. It did not seek review of a contracting officer's decision denying plaintiffs' termination for convenience claim.[9] The contracting officer did not have the opportunity to consider a termination for convenience recovery claim before June 26, 1991. It is not possible for such a claim to have been "in litigation" on June 7, 1991. Section 516 did not divest the contracting officer of authority to consider plaintiffs' post-complaint claims.

Defendant's interpretation of 28 U.S.C. § 516 and its impact on post-complaint termination for convenience claims does not comport with settled law. Plaintiffs' claim for conversion of the Government's termination for default is not equivalent to its claim to recover termination for convenience costs. When plaintiffs submitted their cost recovery claim to the contracting officer, the Department of Justice did not have the means to deprive the contracting officer of authority to render a final decision. Neither did the court. Not until the cost recovery claim was deemed denied and included in plaintiffs' amended complaint in September 1991 did we have jurisdiction to review that claim.

Following a decision to terminate for default, a contracting officer may not decide that § 516 prevents him from considering a termination for convenience cost recovery claim. Such a claim is distinct from the Government's claim for return of unliquidated progress payments, which accompanies the default termination. A contractor's claim can be in litigation only if the contracting officer has made a final decision on that claim. The contracting officer here was not even presented with a termination for conve-

nience claim before plaintiffs filed their post-complaint claims.

### III.

■ A contracting officer is not required to issue a final decision under 41 U.S.C. § 605 unless there is before him a proper CDA "claim," ripe for consideration. A termination for convenience settlement proposal is not a CDA claim. "A settlement proposal is just that: a proposal." *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1543–44 (Fed.Cir.1996). The contract requires the parties to try to reach a settlement once a proposal is introduced. It also requires the plaintiff to submit the proposal to the contracting officer for final decision before the contracting officer can be obligated to make a unilateral determination of proper recovery.[10] A request for final decision signifies an "impasse" (i.e., settlement by negotiation has failed). The contracting officer must then make a unilateral determination of the value of plaintiff's request within 60 days, or notify plaintiff that a decision will be forthcoming.

In *James M. Ellett Construction Co. v. United States*, the contractor submitted a termination for convenience settlement proposal to the contracting officer after the contracting officer terminated the contract for convenience of the Government. Following ten months of fruitless negotiations, plaintiff advised the contracting officer that it would file suit unless a determination were made within 30 days. The contracting officer settled the claim by unilateral determination and plaintiff appealed to this court.

The Government moved to dismiss, arguing that the contracting officer did not have a proper "claim" upon which a final decision could be made. The Federal Circuit decided that plaintiff's proposal ripened into a claim when plaintiff demanded a final decision after months of negotiations. Plaintiff's letter sig-

---

9. Defendant similarly argues that *Boeing* is distinguishable because that complaint did not include a prayer for damages that could be equated to a termination for convenience claim. That distinction is unimportant because a valid termination for convenience claim could not have been in the complaint—none had been submitted to the contracting officer.

10. Another requirement is that the "claim" be a non-routine submission for payment of money. Plaintiffs' termination for convenience cost proposal and claim satisfies this requirement: "[I]t is difficult to conceive of a less routine demand for payment than one which is submitted when the government terminates a contract for its convenience." *Ellett*, 93 F.3d at 1542.

nified an impasse and an express demand for a final decision. The contracting officer therefore had authority to make a determination and the court had jurisdiction to decide the propriety of that determination.

Plaintiffs in the present case submitted a proper claim requesting a final decision. Unlike the posture in *Ellett*, however, plaintiffs submitted their proposal for termination for convenience damages when the contracting officer was convinced that he had made a proper and correct termination for default. He expressly informed the contractors months before they filed their proposal and claim that he would not be willing to consider a termination settlement proposal.

> As the Contracting Officer, I consider the decision to terminate the [A–12] contract for default to be proper and correct. Therefore, I see no grounds for the submission of a termination settlement. . . .

M.S. Mutty Ltr. to Pltfs. (Apr. 30, 1991). Plaintiffs nonetheless sought termination for convenience damages from the Government by the submission of a "Termination for Convenience Settlement Proposal and Claim" for $1.286 billion on June 26.

> [The contractors] consider that their entitlement to a termination for convenience is the subject of a dispute between the parties, and that this proposal constitutes the Contractors' termination claim: (1) for conversion of the termination to one for convenience; and (2) for the contractually authorized damages relating to the requested termination for convenience. The Contractors hereby request the Contracting Officer to allow this claim and make the provisional payment herein requested. Alternatively, if the Contracting Officer refused to consider this claim as previously

indicated by [the contracting officer's April 1991] letter, the Contractors hereby request the Contracting Officer to confirm that position within ten (10) days. In the event the Contracting Officer elects to reverse his previous decision and will now consider this claim, the Contractors hereby request the Contracting Officer to issue a final decision on the [termination for convenience] claim within sixty (60) days after receipt, or advise [the contractors] within this same period of the date such a decision will be rendered.

Pltfs' Ltr. to Admiral W.R. Morris at 3 (June 26, 1991).

The contracting officer still believed that he had made a proper and correct default termination, so plaintiffs asserted that their filing was a ripened CDA claim submitted for final decision. Coupled with language demanding a final decision or notification, plaintiffs contend that their filing constituted a "claim," ripe for unilateral determination. In short, assuming the contracting officer had not reconsidered his decision, an impasse existed between the parties once the contracting officer received the filing.

▇ Plaintiffs' argument essentially is that when a contract is terminated for default and the contractor submits a termination for convenience cost proposal, the "proposal" is transformed into a "claim." We agree. A "default termination fundamentally conflicts with a contractor's claim that it is entitled to TFC costs." *Boeing*, 31 Fed.Cl. at 295. *Ellett* requires an impasse before a contractor may perfect a claim for submission. Plaintiffs' demand for termination for convenience relief from the contracting officer who terminated the contract for default demonstrates an impasse.[11]

---

11. In *Mid–America Eng'g. and Mfg.*, ASBCA 48831, 96–2 BCA ¶ 28,558, 1996 WL 534012 appellant was terminated for convenience in April 1990. A year later, it submitted its proposal to the contracting officer without requesting a contracting officer's decision. The parties exchanged correspondence for the next 18 months before appellant wrote the terminating contracting officer expressly converting its termination for convenience proposal to a claim. Appellant requested a final decision. The parties negotiated until June 1995, when the contracting officer issued a final decision.

The Government moved to dismiss for lack of jurisdiction, claiming that appellant's termination for convenience settlement proposal was a "routine request for payment," and not a "claim." The Government also argued that the terminating contracting officer was not supplied with enough information to "dispute" the proposal.

The board decided, consistent with *Ellett*, that the termination for convenience settlement proposal was a non-routine request for payment. Also, appellant's explicit request for final decision perfected the conversion from a termination

Plaintiffs submitted a claim for termination for convenience damages to the contracting officer for final decision. It was styled a "proposal and claim," but it mandated a contracting officer decision within 60 days. It was a non-routine request for payment, directly contrary to the contracting officer's legal position upon delivery. Evidence of negotiation is not necessary to conclude that plaintiffs submitted a valid claim to the contracting officer.

## IV.

■ The Government's alternative argument is that even if not barred by 28 U.S.C. § 516, we lack jurisdiction to rule on plaintiffs' post-complaint claim for termination for convenience costs because it is premature. The contracting officer terminated the A–12 contract for default. The propriety of that termination was before the court when plaintiffs submitted their termination for convenience cost proposal. According to the Government, it is not proper for a contracting officer to consider such a proposal until and unless a court converts the default termination to one for convenience of the Government. Only after conversion is the contracting officer obligated to consider the cost proposal.

The Government relies on a provision of the contract's Default Clause, FAR 52.249–8(g), to argue that conversion of an improper termination for default is a condition prece-

dent for the contracting officer to consider a termination for convenience cost claim.

> If, after termination, it is determined that the Contractor was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government.

FAR 52.249–8(g). Treatment of the termination "as if" it had been issued for convenience does not mean that the contractors must be placed in the position they would have been had the contract been terminated properly, according to the Government. Thus, the "rights and obligations" of the contractors are governed by the Default Clause unless and until the termination is converted. The Default Clause, of course, does not include a termination for convenience settlement provision.

Plaintiffs' termination for convenience claim could not be premature. The Default Clause of the contract means that when a termination for default is found to be improper, the contractor is placed in the position it should have been had the contracting officer acted properly. In other words, the clause is retroactive. The contractors here were entitled to pursue termination for convenience costs from the time of termination. Moreover, they were entitled to an appealable cost determination from the contracting officer without regard to the propriety of the con-

settlement proposal to a justiciable termination for convenience cost claim. The board denied the Government's motion.

Plaintiffs' claim was perfected in this case when they submitted the settlement proposal and claim requesting a final decision within 60 days, or the contracting officer's determination that he lacked jurisdiction.

In *National Interior Contractors, Inc.*, ASBCA 46012, 96–2 BCA ¶ 28,560, 1996 WL 519879 appellant submitted its termination settlement proposal after the board converted the contracting officer's termination for default to one for convenience of the Government. Less than a month later, appellant sought relief from the board to defuse alleged problems encountered in obtaining cost reimbursement from the contracting officer.

The board denied appellant's motion. Appellant's termination for convenience recovery proposal was not a CDA claim. Citing *Ellett*, the board noted that while the submission of a settle-

ment proposal is a non-routine submission for payment, appellant did not present a claim to the contracting officer because there is no evidence of the parties having reached an impasse. There cannot be a final decision without failed negotiations, and absent evidence showing an impasse, the board determined that appellant's proposal had not ripened into a CDA claim.

Unlike the circumstances in *National Interior*, plaintiffs here submitted their proposal and claim to the contracting officer before the default termination had been converted to one for convenience. As we explain above, an impasse occurred at the time the proposal and claim was filed. *See Balimoy Mfg. Co. of Venice, Inc.*, ASBCA 49730, 96–2 BCA ¶ 28,605 at 142,811, 1996 WL 598933. We do not need evidence of failed negotiations. An effort by the contractors to settle their claim would have been futile because the contracting officer believed that the contract was properly terminated for default.

tracting officer's decision to terminate for default.

It is not premature to file a termination for convenience cost claim before the termination for default is converted.

> If the government wrongfully terminated the contract for default, as plaintiff alleges, then the court must view events as if a TFC "had been issued." Accordingly, the events that followed the termination take on the following character: Plaintiff was entitled to pursue TFC costs. Its entitlement to these costs was, however, in dispute because the government had denied liability for them through its issuance of a default termination. Thus, plaintiff's TFC claim was properly before the CO, it was deemed denied after 60 days, and it is now properly before this court.

*Boeing*, 31 Fed.Cl. at 295 (footnote omitted).

It would not be improper, therefore, for a contractor to submit a termination for convenience cost proposal to the contracting officer while at the same time contesting the propriety of the default termination. If the contract should have been terminated for convenience, the "rights and obligations" under the contract require the parties to consider a cost proposal consistent with that decision.

If the contracting ·officer cannot make a termination for convenience cost determination while a court decides the propriety of his decision to terminate for default, a resulting deemed denial does not prejudice the Government. The contractor still bears the burden of establishing allowable costs incurred and reasonable profits. A court is capable of making a "fair" determination according to the FAR.[12]

The Government's position would deprive the court of jurisdiction to decide plaintiffs' damages, at least temporarily. *See McDonnell Douglas Corp. v. United States*, 37 Fed.

Cl. 270 (1996) (holding that plaintiffs' recovery is limited to incurred costs plus interest). The effect of such a ruling would require the contractors to submit a new proposal seeking recovery as if the contract had been terminated properly for convenience. The contracting officer would consider plaintiffs' proposal and the parties would try to negotiate a "fair" recovery. If they could not agree and negotiations reached an impasse, the contracting officer would have 60 days in which to make a unilateral determination of plaintiffs' recovery, or notify plaintiffs that a decision is forthcoming in the near future. If the contracting officer did neither, or if plaintiffs did not agree with the contracting officer's determination, they could then appeal the matter here.

For us to remand this case to the contracting officer for a cost settlement after converting the termination for default to one for convenience would be "inimical to two goals of the CDA: providing for the efficient and fair resolution of contract claims." *Reflectone*, 60 F.3d at 1580 (*cited in Ellett*, 93 F.3d at 1545). "Indeed, the FAR grants contractors a right to appeal 'from' a contracting officer's determination on a settlement proposal. It does not speak of appealing that decision back 'to' the contracting officer by submitting a new claim, a futile act." *Ellett*, 93 F.3d at 1545 (citation omitted).

■ This court should "grant all necessary relief in one action" and avoid piecemeal litigation. H.R.Rep. No. 1023, 92d. Cong., 2d Sess. 3 (1972), U.S. Code Cong. & Admin.News at 3116, 3118. (*quoted in Boeing Co.*, 31 Fed.Cl. at 296). When possible, all claims should be addressed in a single action.[13] The Federal Circuit has stated that "[i]n light of the greater formality of the Claims Court [compared to the boards] ... the more efficient approach is to appeal all issues together." *Overall Roofing & Constr.*,

---

12. In fact, such a determination in this case depends on legal complexities that are described at *McDonnell Douglas Corp. v. United States*, 37 Fed.Cl. 270 (1996). Ultimately, a court had to decide such issues.

13. This is not inconsistent with right to appeal issues of one contract separately in government

contract disputes. In fact, that principle is the reason that § 516 does not deny jurisdiction in these circumstances. Once litigation begins in this court, however, it is prudent for the assigned judge to hear all issues arising under the contract.

*Inc. v. United States,* 929 F.2d 687, 690 (Fed.Cir.1991). Parties may always agree to settle or stipulate damages. If they do not agree on damages, the court must decide.

 We may remand proceedings to the contracting officer for a final decision when a claim has been deemed denied. *See* 41 U.S.C. § 605(c)(5); *Durable Metal Prods., Inc.,* 21 Cl.Ct. at 47. We may also assume the role of the terminating contracting officer and consider plaintiffs' claims. At this stage, that is the most "efficient" and "fair" result. Efficiency dictates that this case be resolved without returning the settlement claim to the contracting officer. The parties are familiar with the claims and the issues related to damages. Defendant has audited plaintiffs' claims and some issues have been litigated already. Furthermore, the parties have stipulated damages in preparation for appeal. To remand proceedings to the contracting officer at this juncture would defeat the parties' good faith efforts and disrupt progress toward appeal.

The contractors submitted a certified termination for convenience settlement claim with the contracting officer. The claim was deemed denied after 60 days without action. Plaintiffs are entitled to interest on their termination for convenience claim from the date of their submission to the contracting officer. *See* 41 U.S.C. § 609; FAR 33.208(a). This entitlement places upon the Government the consequences of having issued an improper termination for default.[14] The Government does not suffer when the termination for default is found to have been proper.

### CONCLUSION

We have jurisdiction over plaintiffs' termination for convenience damages for the reasons stated. Defendant's January 1996 re-newed motion to dismiss is DENIED IN PART.

The parties have stipulated damages based on our rulings to date. Therefore, defendant's request for certification for interlocutory appeal is DENIED as moot. The Clerk will enter judgment upon notice from the court.

IT IS SO ORDERED.

---

14. We note that the FAR does not cause the Government to bear all the burden of an improper termination for default. No interest accrues during the time that it takes the contractor to quantify and present a cost recovery claim for final decision. At the earliest, interest begins to accrue from the time the contracting officer receives the claim. FAR 33.208(a)(1). In this case, the contracting officer received the claim on June 26, when the contractors introduced their proposal. But June 26 is more than five months after the contracting officer improperly terminated plaintiffs for default. The contractors cannot collect interest for this interim period. Presumably they dedicated this time period to generating an accurate cost recovery proposal, but the FAR penalizes them for each day they delay the recovery process. Interest was accruing at approximately $300,000 per day by June 26.