**HAMILTON SECURITIES ADVISORY SERVICES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 98–169C.

United States Court of Federal Claims.

April 27, 1999.

---

claim for relief from the agency or on the claim for monies allegedly owed by the plaintiff to the government. For the reasons discussed below, the defendant's motion to dismiss is denied.

Claude W. Goddard, Wickwire Gavin, P.C., attorney of record for the plaintiff. Christopher M. Johnson, Kilcullen, Wilson, and Kilcullen, Chtd., Washington, D.C., of counsel.

David J. Gottesman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were Robert M. Hollis, Assistant Director, Commercial Litigation Branch, and David M. Cohen, Director, Commercial Litigation Branch. Virginia Kelly Stephens, United States Department of Housing and Urban Development, Office of General Counsel, Washington, D.C., of counsel.

## OPINION

HORN, Judge.

The plaintiff, Hamilton Securities Advisory Services, Inc. (Hamilton), seeks damages from the United States Department of Housing and Urban Development (HUD) for HUD's failure to pay invoices totaling $1,505,256.00. The claim arose out of a contract between HUD and Hamilton which provided for Hamilton to conduct auction sales of groups of HUD-held mortgages. Hamilton also seeks the reversal of the allegedly final decision of the HUD contracting officer that HUD is entitled to an offset in the amount of $3,883,551.00. The defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The defendant argues that the United States Court of Federal Claims does not have subject matter jurisdiction under the Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 601–613 (1994), because the contracting officer has not issued a final decision on Hamilton's

## FACTS

The facts of this case are not in dispute. HUD awarded Contract No. DU100C000018161 (the 18161 contract) and Contract No. DU100C000018505 (the 18505 contract) to Hamilton. Under the contracts, Hamilton was to provide financial advisory support services necessary to sell or refinance HUD-held mortgages, and to conduct auction sales of groups of HUD-held mortgages. Hamilton rendered services with respect to two auctions: the "North Central Sale," conducted under the 18505 contract, and the "West of the Mississippi Sale," conducted under the 18161 contract.

The contracts were indefinite-quantity contracts, under which services were to be procured through the issuance of task orders. On April 25, 1996, HUD issued Task Order 001 under the 18505 contract. HUD's stated objective under Task Order 001 was, "to restructure its portfolio of insured mortgages and to sell its portfolios of multifamily and single family HUD-held mortgages and HUD-owned properties while maximizing the proceeds of those sales." In furtherance of this objective, Task Order 001 required Hamilton to analyze bids submitted by prospective purchasers using a computer optimization model, which would analyze bids according to specific criteria. Hamilton retained the services of Lucent Technologies/Bell Laboratories (Lucent) and provided Lucent with instructions to run the optimization model. Hamilton later determined that there was a discrepancy in the way the "bid floor" was calculated in the two auctions, which resulted in some bids being chosen as the winning bids which would not have been the winning bids if the optimization model had been run correctly.[1]

---

1. In the auctions at issue, each bidder was permitted to designate the minimum aggregate dollar amount of awards that the bidder would have to be awarded—the bid floor—before any of its bids would become binding. The bid instructions stated that the bid floor for each bidder should be expressed in terms of the unpaid principal balance of the loans bid upon. The optimization model instead expressed the bid floor in

In its complaint, plaintiff states, "Hamilton has estimated that, if the discrepancy had not existed and all other sale variables were construed most favorably towards HUD, HUD possibly might have collected an additional $3,883,551 on such sales." In December, 1996, Hamilton took corrective action for the future and disclosed this discrepancy to HUD Assistant Secretary Nicolas Retsinas and the Comptroller of the Federal Housing Administration, Kathy Rock, who also was the Government Technical Monitor for the Hamilton contract.

Task Order 001 provided that Hamilton was to be paid $868,417.00 per month for its services, not to exceed $20,842,000.00, and that payment was to be made upon the submittal of a proper invoice and support documentation, and upon approval by the Government Technical Monitor. The government paid Hamilton for all invoices submitted before September 26, 1997. On September 26, 1997, Hamilton submitted an invoice for $868,417.00 to HUD for services rendered from August 26, 1997 to September 25, 1997. On October 23, 1997, Hamilton submitted an invoice for $636,839.00 to HUD for services rendered from September 26, 1997 to October 17, 1997, reflecting a pro rata calculation of $22/30$ days at $868,417.00 per month. To date, HUD has not paid Hamilton on either of these invoices.

On October 17, 1997, HUD Contracting Officer Annette Hancock sent a letter to C. Austin Fitts, president of Hamilton. The October 17th letter summarizes the documentation submitted by Hamilton regarding the incorrect application of the optimization model. The October 17th letter concluded:

I have thoroughly reviewed the contents of the referenced documents written by Hamilton. I find that they document Hamilton's failure to perform services required under the Task Order. Specifically, the Task Order Statement of Work at Sections 3.2, 6.1 and 6.2, requires the contractor to run the optimization model for the auctions and to deliver bids in accordance with the optimization model. By your own admission, Hamilton provided erroneous instructions that resulted in the Depart-

ment suffering significant loss; a loss quantified by Hamilton at $3,883,551. I find that this amount, at a minimum, represents the monetary loss to HUD as a result of Hamilton's performance failure. However, the government reserves the right to make future claims against Hamilton to recover any additional losses or damages the Department may suffer or has suffered as a result of Hamilton's failed performance.

In accordance with paragraph 32.610 of the Federal Acquisition Regulation, this letter is a demand for payment of the $3,883,551 loss that the department suffered as a result of Hamilton's performance failure. . . . If I do not hear from you within 10 work days, it is assumed you have determined not to make such voluntary repayment. The Department is currently withholding any further payments due and owing Hamilton under the terms and conditions of Contract DU100C000018505 and Task Order 001 until such time as the debt is satisfied.

Further, any amounts not paid within 30 days from the date of receipt of this letter will bear interest at the rate established by the Secretary of the Treasury, for the period affected, under Public Law 92–41. In addition, you may submit a proposal for deferment of collection if immediate payment is not practicable or if the amount is disputed.

Hamilton considered this letter a termination of the contract for the convenience of the government.

On October 22, 1997, Hamilton's attorneys at the time, Leslie Lepow and David Handzo, replied with a letter to Hancock, in which Hamilton "vigorously disputed" HUD's claim for setoff. The October 22nd letter concluded:

Nevertheless, because Hamilton does not have the resources to deal with these continued assaults *ad infinitum*, we suggest the following. Legal representatives of your office and Hamilton should meet to discuss a method of settlement or alternative dispute resolution to resolve the de-

terms of minimum revenue, i.e., the price offered by the bidder.

mand and all other issues with the Department, once and for all. We do not believe that your demand is well-founded as a matter of contract law, but we are willing to attempt to resolve matters quickly and without litigation. In view of Hamilton's current financial condition and the magnitude of your demand, Hamilton will also submit a proposal for deferment of collection.

On November 13, 1997, Hamilton representative Brian Dietz sent an additional letter to Hancock. Hamilton requested deferment of the collection of the alleged $3,883,551.00 contract debt demanded by HUD and against which HUD was withholding contract payments otherwise due Hamilton.

On December 10, 1997, Fitts, the president of Hamilton, sent a second letter to Hancock. The December 10, 1997 letter concluded:

> Accordingly, claim is hereby made for the combined amount of $1,505,256, plus interest from and after the date of this letter. Hamilton requests that a contracting officer final appealable decision be issued within the time provided by the Contract Disputes Act of 1978 and FAR Part 33, Subpart 2.

> I certify that the claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

On January 8, 1998, Hamilton filed suit against HUD in the United States District Court for the District of Columbia. *See Hamilton Securities Group, Inc. and Hamilton Securities Advisory Services, Inc. v. United States Department of Housing and Urban Development, et al.,* No. 98–0036. The District Court case consisted of eight counts, of which four are relevant in the above-captioned case. Count 1 was entitled, Administrative Procedure Act—Improper Withholding of Properly–Invoiced Payments, and sought the payment of the September 26, 1997 and October 23, 1997 invoices. Count 2 was entitled Due Process Clause—Improper Withholding of Properly—Invoiced Payments, and sought the payment of the September 26th and October 23rd invoices. Count 7 was entitled Due Process Clause—Improper Blackballing of Hamilton, and alleged that HUD actions, including withholding funds that Hamilton earned, violated the Due Process Clause. Count 8 was entitled Due Process—Actions Putting Hamilton Out Of Business, and also alleged that HUD's withholding of funds due to Hamilton violated the Due Process Clause. In the District Court case, the plaintiffs sought an injunction preventing HUD from continuing to withhold payment on the invoices, as well as a writ of mandamus seeking payment of the invoices. On February 17, 1998, Hamilton filed a notice of dismissal of Counts 1 and 2. On March 4, 1998, Hamilton filed a notice of dismissal of Counts 7 and 8. The plaintiff ultimately dismissed each of the counts in the complaint. The District Court entered an order of dismissal of the entire case on May 11, 1998. Thereafter, plaintiff filed the above-captioned case in the United States Court of Federal Claims on March 9, 1998.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.*

The standard for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction and/or a motion to dismiss for failure to state a claim upon which relief can be granted has been articulated by the United States Supreme Court, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v.*

*Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Alaska v. United States,* 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, as amended, 28 U.S.C. 1491 (1994 & Supp. II 1996), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right that is enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

■ The Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 601–613, provides the United States Court of Federal Claims with jurisdiction over claims[2] concerning ex-

---

2. The FAR defines a "claim" as follows:

*Claim,* as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under a con-

ecutive agency contracts, as defined in 41 U.S.C. § 602(a), which includes the contract at issue in the above-captioned case. The CDA also imposes several jurisdictional prerequisites before a contractor can file suit in the United States Court of Federal Claims. It is undisputed that claims brought under the CDA must first be submitted in writing to the contracting officer for a final decision. 41 U.S.C. § 605(a) (1994); *see Santa Fe Eng'rs, Inc. v. United States,* 818 F.2d 856, 858 (Fed.Cir.1987); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966, 971 (1981). The CDA does not require that a claim be submitted on any particular type of form or that a claim use any particular wording. *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* For claims greater than $100,000.00, as in the instant case, the contractor must certify that "the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor." 41 U.S.C. § 605(c)(1) (1994). In addition, the contracting officer must be obligated to act on the claim submitted and must explicitly or impliedly deny the claim before the contractor will be allowed to commence a suit in the United States Court of Federal Claims. *See Al Munford, Inc. v. United States,* 30 Fed.Cl. 185, 190 (1993).

Hamilton argues that the contracting officer has impliedly denied the claim presented in the December 10, 1997 letter. The December 10th letter constituted a written, cer-

tified claim by the plaintiff for $1,505,256.00, plus interest, to the contracting officer but, to date, the contracting officer has not issued a final decision either granting or denying plaintiff's claim. Accordingly, the December 10th letter can only confer jurisdiction on the United States Court of Federal Claims if the contracting officer was obligated and authorized to act on the December 10th letter prior to the time the plaintiff filed suit in this court and there has been a deemed denial of the plaintiff's claim.

■  The plaintiff argues that the claim presented in the December 10, 1997 letter was constructively denied under the 60-day deemed denied provision of the CDA. Within 60 days of the submission of a certified claim over $100,000.00, the contracting officer is required to either issue a final decision or notify the contractor of the time within which a decision will be issued. 41 U.S.C. § 605(c)(2) (1994). The decision of the contracting officer must be issued within a reasonable time, in accordance with agency regulations. 41 U.S.C. § 605(c)(3) (1994). Both parties concede in this case that the contracting officer has not issued a final decision or informed the contractor when the decision will be issued within the requisite 60 calendar days. Failure on the part of the contracting officer to issue a decision on a contract claim or to notify within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim. 41 U.S.C. § 605(c)(5) (1994); *Do-Well Mach. Shop, Inc. v. United States,* 870 F.2d 637, 640 (Fed.Cir.1989). Hamilton's certified claim was submitted to the contracting officer on December 10, 1997, and plaintiff commenced suit in this court on March 9, 1998; thus, a total of 88 days passed from the submission of the claim to the contracting

tract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act and 33.207. A voucher, invoice, or other routine

request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 33.201 (1997) (emphasis in original).

officer and commencement of suit in the United States Court of Federal Claims.

▬ The government contends in the instant case, however, that the plaintiff's claim could not be deemed denied by operation of 41 U.S.C. § 605(c)(5) because the 60-day deemed denied period was tolled during the pendency of the District Court case. In order for the 60-day deemed denied provision of the CDA to run, the contracting officer must be obligated to act on a claim. *White Plains Iron Works, Inc. v. United States*, 229 Ct.Cl. 626, 629–30 (1981); *Peterson Builders, Inc. v. United States*, 27 Fed.Cl. 443, 445 (1993). When a claim is the subject of litigation, however, the exclusive authority to act in the pending litigation is with the United States Department of Justice, 28 U.S.C. § 516 (1994), and the contracting officer is without authority to act on related claims. *Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed.Cir.1996). "The 'exclusive authority' given to the Department of Justice 'divests the contracting officer of his authority to issue a final decision on the claim.'" *Id.* (quoting *Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed.Cir.1993)). If a claim is in litigation, the contracting officer not only is not obligated to act on a claim, but actually may not do so under this in litigation bar. *Id.*

The plaintiff filed suit in the United States District Court for the District of Columbia on January 8, 1998. The claims in the District Court case which are at issue in the above-captioned case were taken out of litigation on March 4, 1998, when the plaintiff voluntarily dismissed counts 7 and 8 of the District Court complaint. Counts 1 and 2 had been dismissed previously. If the pendency of the District Court case tolled the running of the 60-day period, the plaintiff's claim included in the December 10, 1997 letter was not in litigation only from December 10, 1997 (when the claim was submitted to the contracting officer) to January 8, 1998 (when the plaintiff filed suit in District Court) and March 4, 1998 (when the relevant counts of the District Court case were dismissed) to March 9, 1998 (when the plaintiff filed the above-captioned case in this court), a total of only 35 days in which the contracting officer could

have acted. Accordingly, Hamilton's claim under the December 10, 1997 letter can only be deemed denied if the 60-day action period was not tolled by the District Court case.

▬ Hamilton argues that the 60-day deemed denied period was not tolled by the District Court case because the claims in the District Court case were not the same claims as those submitted to the contracting officer in the December 10, 1997 letter. The in litigation bar will only toll the running of the 60-day deemed denial provision of the CDA if the claim or claims at issue in the prior litigation are the same as the claim or claims at issue in the present litigation. *Case, Inc. v. United States*, 88 F.3d at 1010. While conceding that the claims in the December 10, 1992 letter and the District Court complaint have some overlapping factual and legal issues, Hamilton argues that the claims are different because the District Court case relied on the United States Constitution and the Administrative Procedure Act, while the claims filed with the contracting officer relied on the Contract Disputes Act.

▬ The United States Court of Appeals for the Federal Circuit has held that claims in different litigation are considered the same if the claims, "'allege[ ] entitlement to the same money based on the same partial performance, only under a different label.'" *Case, Inc. v. United States*, 88 F.3d at 1010 (quoting *Sharman Co. v. United States*, 2 F.3d at 1571). Under this test, we find that the Counts 1, 2, 7, and 8 of the District Court case were the same as the claims submitted to the contracting officer in the December 10, 1997 letter. Both the District Court case and the submission to the contracting officer on December 10, 1997 sought payment of the same money: $1,505,236.00 allegedly due under the September 26, 1997 and October 23, 1997 invoices. Both the District Court case and the submission to the contracting officer were based on the same partial performance, services rendered pursuant to the 18161 and 18505 contracts. The fact that in the District Court case plaintiff sought an injunction and writ of mandamus requiring repayment for violation of the APA and the Due Process Clause, whereas the claim plaintiff submitted to the contracting officer was for damages

under the CDA, is the precise difference in legal "labels" that the Federal Circuit held irrelevant in its decision in *Case, Inc. v. United States*, 88 F.3d at 1010.

Hamilton argues that this case is analogous to *McDonnell Douglas Corp. v. United States*, 37 Fed.Cl. 285 (1997). In *McDonnell Douglas*, plaintiffs filed suit in the United States Court of Federal Claims seeking reversal of the contracting officer's decision to terminate a contract for default. *Id.* at 287. Plaintiffs later submitted a termination for convenience settlement proposal to the contracting officer. *Id.* at 291. In *McDonnell Douglas*, the United States Court of Federal Claims held that the contracting officer was not divested of jurisdiction to consider the plaintiff's termination for convenience settlement proposal:

> [C]ontractor claims seeking termination for convenience costs and equitable adjustment are not pending before the court merely because a complaint has previously been filed seeking reversal of a termination for default and demand for return of progress payments, even if the various claims and the complaint involve common questions of law and fact.

*Id.* at 290 (*quoting Boeing Co. v. United States*, 31 Fed.Cl. 289, 292–93 (1994)).[3] There are, however, crucial differences between the *McDonnell Douglas* facts and the above-captioned case. The contracting officer in *McDonnell Douglas* was asked to decide an appropriate measure of termination for convenience costs, should the contractor have prevailed in their suit seeking reversal of the contracting officer's previous decision to terminate for default. *McDonnell Douglas Corp. v. United States*, 37 Fed.Cl. at 291. Even if the contracting officer in *McDonnell Douglas* had reduced the termination for convenience costs to a fixed dollar amount, that decision would not have affected the ability of the Justice Department to argue that the initial decision to terminate the contract for default was correct, since termination for convenience costs are not part of an appeal of a termination for default. By

contrast, in the above-captioned case, if the contracting officer had granted Hamilton's certified claim in the December 10, 1997 letter, Counts 1, 2, 7, and 8 of the District Court case probably would not have been filed, or, if filed, would have been rendered moot. This is the precise situation that 28 U.S.C. §§ 516–520 seek to avoid, namely, actions by a contracting officer which impact the ability of the Justice Department to conduct litigation on behalf of the United States. 28 U.S.C. §§ 516–520 (1994); *see Case, Inc. v. United States*, 88 F.3d at 1009.

Thus, in the above-captioned case, because the claims submitted to the contracting officer in the December 10, 1997 letter were the same as the overlapping counts filed in the District Court case, the 60-day deemed denial provision of the CDA was tolled from the date of the filing of the District Court case on January 8, 1998 until March 4, 1998, when Counts 7 and 8 were voluntarily dismissed by the plaintiff. During this time, the contracting officer not only was not obligated to deal with the plaintiff's December 10th claim, but was without authority to do so under the in litigation bar. Therefore, the contracting officer was only obligated to deal with the plaintiff's December 10th claim for a total of 35 days, and the plaintiff's December 10, 1997 claim letter cannot be subject to a deemed denial under 41 U.S.C. § 605(c) and used to vest jurisdiction on the United States Court of Federal Claims.

■ Unable to rely on the December 10, 1997 claim letter to establish jurisdiction in this court, Hamilton also argues that the October 22, 1997 letter and the November 13, 1997 letter, either separately or in combination, constituted a claim which has been deemed denied because the contracting officer has failed to issue a decision within 60 days. Under the CDA, submissions to a contracting officer are classified as either undisputed routine requests for payment or non-routine written demands seeking payment as a matter of right. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577 (Fed.Cir.1995).

---

3. In the quoted portion, the *Boeing* trial court, after a remand, was responding to a decision, issued as an unpublished opinion by the Court of Appeals for the Federal Circuit, *Boeing Co. v.*

*United States*, 991 F.2d 811 (Fed.Cir.1993), which had reversed in part and vacated the earlier lower court decision found at 25 Cl.Ct. 441 (1992).

Routine requests for payment include vouchers, invoices, and similar requests for payment, which are " 'submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance.' " *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1542 (Fed.Cir.1996) (quoting *Reflectone, Inc. v. Dalton,* 60 F.3d at 1577). Other submissions, such as the October 22, 1997 and November 13, 1997 letters in the case at bar, fall into the category of non-routine submissions. In order for a non-routine submission to constitute a claim under the CDA, it must be (1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain. 48 C.F.R. § 33.201; *James M. Ellett Constr. Co. v. United States,* 93 F.3d at 1542. In addition, claims in excess of $100,000.00 must be certified. 41 U.S.C. § 605(c)(1). CDA claims also must be submitted to the contracting officer for a final decision. *James M. Ellett Constr. Co. v. United States,* 93 F.3d at 1543.

■■■ The October 22, 1997 and November 13, 1997 letters, in isolation or read together, do not constitute claims under the *Ellett* test. The government argues that the language of the October 22nd letter seeks settlement or alternative dispute resolution and thus does not seek a final contracting officer's decision. A non-routine submission does not, however, require an explicit request for a final decision. " 'As long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met.' " *James M. Ellett Construction,* 93 F.3d at 1543 (quoting *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572 (Fed. Cir.1992)). We will assume, without deciding, that Hamilton sought a final contracting officer's decision in its October 22, 1997 letter. Even assuming that the October 22nd letter sought a final contracting officer's decision, however, the claim was not certified pursuant to 41 U.S.C. § 605(c)(1). The November 13, 1997 letter also was not certified. The absence of certification on a claim in excess of $100,000.00 is fatal to jurisdiction. 41 U.S.C. § 605(c)(1); *Pevar Co. v. United States,* 32 Fed.Cl. 822, 825 (1995); *Hamza v. United States,* 31 Fed.Cl. 315, 323 (1994).

Additionally, the October 22, 1997 letter does not demand a sum certain as required by the FAR and explained in the *Ellett* case. The November 13, 1997 letter also does not demand a sum certain from the government. Because of the absence of certification, as required under 41 U.S.C. § 605(c)(1) and the failure to demand a sum certain, the October 22nd and November 13th letters, in isolation or read together, do not constitute claims under the CDA. As such, the contracting officer was not obligated to act on the requests included in the letters, and the 60-day deemed denial provision of the CDA is inapplicable.

Hamilton also argues that the contracting officer issued a final decision when she communicated the government's claim for setoff in the October 17, 1997 letter to the plaintiff. According to the plaintiff, the October 17, 1997 letter is sufficient to vest jurisdiction in the United States Court of Federal Claims in order to appeal the contracting officer's final decision on the government claim. Plaintiff also alleges that the October 17, 1997 final assertion of the government's claim functioned as a constructive denial of its contractor claim.

The standard for what constitutes a final decision on a government claim has been the subject of litigation in the past. In *Placeway Construction Corporation v. United States,* 920 F.2d 903 (Fed.Cir.1990), the contractor submitted a voucher requesting payment of the contract balance, which had not been paid. The contractor next submitted a written demand for payment of the contract balance to the contracting officer. *Placeway Constr. Corp., v. United States,* 920 F.2d at 905. None of the contractor's claims were certified. In a September, 1986 letter, the contracting officer denied the contractor's demand, deciding that the contract price balance would not be released because the contractor had failed to complete the contract in a timely manner. *Id.* The Court of Appeals for the Federal Circuit wrote that the Claims Court had determined that the government had asserted a right of setoff, which constituted a government claim, but that the contracting officer had not computed the amount of the government's setoff, so that there was

no contracting officer final decision, and no jurisdiction in the Claims Court. The Court of Appeals also indicated that the Claims Court had noted that the contracting officer's setoff letter did not contain the indicia of a claim, i.e., it was not labeled a "Final Decision," and did not contain the notice of appeal rights to the contractor normally included in contracting officer final decisions. *Id.* at 906.

The Federal Circuit, in reversing the Claims Court in *Placeway*, held that:

> the set off asserted is a government claim, but we conclude that the CO [contracting officer] effectively made a final decision on the government claim. It was undisputed that Placeway had completed performance of the contract. Moreover, the contract price for the work completed was undisputed and was due upon completion of work. Although the CO may have implied that the amount of the claimed setoff would be redetermined in,the future, the CO effectively granted the government's claim in the amount of $297,057.12 when he declined to pay Placeway the balance due on the contract. That the CO might decide Placeway owed more or less at a later time does not affect the finality of the decision made granting the government a sum certain, $297,057.12.

> \* \* \*

> The CO's decision ... did determine both liability and damages. He concluded that Placeway was liable because of delayed performance and effectively ruled that damages would be the contract balance, $297,226.12, subject to revision if he concluded that different damages were due at some indeterminate time in the future. Accordingly, we conclude that the CO made a final decision of the government claim alleging damages because of Placeway's delay in contract performance. The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor. Moreover, the CO's decision was adverse to Placeway and thus it could properly appeal to the Claims Court.

*Id.* at 906–07 (footnote omitted). The Federal Circuit also reasoned that a decision im-

posing liability is implicit in a contracting officer's decision to award specified damages. *Id.* at 907 n. 2. The Federal Circuit focused not on labels and other indicia, but on the facts of a particular case, to find that the contracting officer had, in the court's words, "effectively" issued a final decision to the contractor on the government's claim, such that the Claims Court had jurisdiction over all of the claims presented. *Id.* at 905–06. Thus, the absence of indicia is not fatal to a contracting officer's final decision; conversely, the mere existence of indicia, absent the requisite elements of a final decision, would be fatal. The Court of Appeals specifically stated: "As a final decision on the government claim, the Claims Court has jurisdiction even though the claim was not certified. Accordingly, we vacate the Claims Court's dismissal of Count II and remand for further proceedings." *Id.* at 907.

In *Sharman Co. v. United States*, 2 F.3d 1564 (Fed.Cir.1993), the contractor repudiated the contract during the performance period and the government terminated the contract for default. *Sharman Co. v. United States*, 2 F.3d at 1566. On September 12, 1989, the contracting officer sent a "Notice and Demand for Payment of Contract Debt" letter to the contractor, seeking repayment of progress payments made under the contract. *Id.* at 1566–67. The contracting officer's letter also notified the contractor that it could submit a proposal for deferment of collection if it disputed the amount sought. *Id.* at 1567. The Claims Court held that the contracting officer's letter was a final decision on the government's claim for the progress payments. *Id.* at 1566. The Federal Circuit reversed, holding:

> On its face, this letter simply states that it is a "notice and demand for payment"; it does not contain the customary designation "final decision." The text of the September letter also makes clear that it is not a final decision because it specifically invites Sharman to submit a proposal for deferment of collection "if immediate payment is not practicable or if the amount is disputed." 24 Cl.Ct. at 765. As the Claims Court itself acknowledged, such notices are "tentative determinations issued to invite

contractor comment rather than as final decisions." *Id.* at 768 (citing *Crippen & Graen v. United States*, 18 Cl.Ct. at 240). *Sharman Co. v. United States*, 2 F.3d at 1570. The government argues, based on *Sharman*, that the Federal Circuit adopted a rule by which any contracting officer letter which invites the contractor to submit a proposal for deferment of collection becomes a tentative determination issued to invite contractor comment, and is not a final decision. Thus, under the government's analysis, the October 17th letter should not be considered a final decision for the purposes of vesting jurisdiction in this court.[4]

The problem with the government's invocation of *Sharman* is that it ignores the process set up in 48 C.F.R. § 32.6, and, particularly, 48 C.F.R. § 32.610 (1997). Under Subpart 32.6, there is a potential two-step process. The first step may be negotiation. Under FAR 32.606, a contracting officer shall determine the amount of the contract debt, considering both the government's claim and any contract claims by the contractor against the government. 48 C.F.R. § 32.606(b) (1997). The contracting officer is implicitly allowed to provide notice to the contractor of the tentative determination of the amount of contract debt to facilitate negotiation, but such a determination, according to the words of the FAR, explicitly is not a final contracting officer's decision. *Id.* It is these determinations under FAR 32.606 that the Claims Court in *Sharman* correctly described as "tentative determinations issued to invite contractor comment rather than as final decisions."

*Sharman Co. v. United States*, 24 Cl.Ct. at 768.

Under FAR 32.608, if negotiation with the contractor fails to resolve the claims, the contracting officer is required to issue a final, unilateral decision on the amount of the contract debt. Under FAR 32.610, a contracting officer final decision is required to include a demand for payment. 48 C.F.R. § 33.211(a)(4)(vi) (1997). Moreover, a demand for payment is required to notify the contractor that the contractor may submit a proposal for deferment of collection if immediate payment is not practicable or if the amount is disputed. 48 C.F.R. § 32.610(a)(3) (1997). If the presence of this deferment language automatically rendered a contracting officer decision non-final, it would render FAR 32.610 superfluous.[5] Accordingly, the presence of the language notifying a contractor that the contractor may submit a proposal for deferment of collection, if immediate payment is not practicable or if the amount is disputed, only renders a contracting officer's tentative determination of the amount of contract debt under FAR 32.606 non-final. The mandatory presence of such language has no effect on the finality of demands for payment under FAR 32.610.

In the instant case, the October 17, 1997 letter from the contracting officer to plaintiff constitutes a final decision on the government's claim against the plaintiff under the fact-specific analysis urged by *Placeway Constr. Corp. v. United States*, 920 F.2d at 907. The requirements for a final contracting officer decision are set out in 48 C.F.R. § 33.211(a) (1997).[6]

---

4. Hamilton argues that *Sharman* was overruled by *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir.1995) (en banc). The government correctly points out, however, that *Reflectone* only overruled one, inapplicable part of the *Sharman* decision. *Sharman* relied on two independent bases for finding that the demand letter was not a final decision. First, the Federal Circuit concluded that the language which invited the contractor to submit a proposal for deferment of collection meant that the demand letter was not a final decision. *Sharman Co. v. United States*, 2 F.3d at 1570. Second, the Federal Circuit held that the demand letter did not constitute a claim, as the amount specified in the demand letter was not in dispute when the demand letter was written. *Id.* In *Reflectone*, the Federal Circuit overruled the

second of these *Sharman* findings, that a claim must already be in dispute when submitted to the contracting officer. *Reflectone Inc. v. Dalton*, 60 F.3d at 1578. The *Reflectone* decision did not impact on the first *Sharman* issue, that not all demand letters constitute final decisions.

5. The FAR contemplates inclusion of the deferment process during the post final decision process. *See* 48 C.F.R. § 32.613 (1997) (Deferment of Collection).

6. That section states:
 (a) When a claim by or against a contractor cannot be satisfied or settled by mutual agreement and a decision on the claim is necessary, the contracting officer shall—

As discussed above, in *Placeway,* the Federal Circuit permitted an exception to the formal requirements when it held that a contracting officer's decision was final even though it did not contain the label "final decision" and failed to provide the contractor with notice of its appeal rights as required by FAR 33.211(a). *Placeway Constr. Corp. v. United States,* 920 F.2d at 906. Consistent with *Placeway,* a contracting officer decision asserting a government setoff claim is final if it determines both liability and damages. *Id.* at 907. Under this test, the October 17, 1997 letter should be considered a final decision on the government's claim for setoff. The contracting officer determined liability when she found that Hamilton had failed to perform services under Task Order 001. The contracting officer determined that the government's damages were equal to the difference between the amount HUD received from the auctions and the amount HUD would have received if the auctions had been run correctly, which the contracting officer quantified as a minimum of $3,883,551.00. This decision is final, even though the government reserved the right to make further claims. *Id.* Because the United States Court of Federal Claims has jurisdiction over appeals from final decisions of contracting officers on government claims, this court has jurisdiction to hear Hamilton's appeal of the contracting officer's final decision on the government setoff claim. *Placeway Constr. Co. v. United States,* 920 F.2d at 906.

\* \* \*

(4) Prepare a written decision that shall include a—

(i) Description of the claim or dispute;

(ii) Reference to the pertinent contract terms;

(iii) Statement of the factual areas of agreement and disagreement;

(iv) Statement of the contracting officer's decision, with supporting rationale;

(v) Paragraph substantially as follows:

"This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate

In the case at bar, we have established that the contracting officer has issued a final decision on the government claim against the plaintiff in the October 17, 1997 letter. Regarding the December 10, 1997 certified claim submitted to the contracting officer, however, no final decision has been issued, and the time which the contracting officer is allocated to reach a final decision had not elapsed at the time the above-captioned lawsuit was filed. The question presented to the court, therefore, is when there is a contracting officer who makes a final decision on a government claim for setoff, does the United States Court of Federal Claims also have jurisdiction to hear a contractor's claim, even if there is no explicit contracting officer's final decision on that contractor's claim.

In *Kit–San–Azusa, J.V. v. United States,* 32 Fed.Cl. 647 (1995), the court stated:

The Federal Circuit has allowed the Government to litigate set-offs and "mirror-image" claims even in the absence of a direct decision by the CO. In *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 906–07 (Fed.Cir.1990), the court in effect deemed that the CO had granted the Government's previously unasserted claim for a set-off when it denied plaintiff's claim for payment of the contract balance. *See also Sharman Co. v. United States,* 2 F.3d 1564, 1566, 1570 (Fed.Cir.1993) (implying that when two "mirror image" claims are "effectively the same claim, but made by [opposing] part[ies]," *that a CO final deci-*

that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision"; and

(vi) Demand for payment prepared in accordance with 32.610(b) in all cases where the decision results in a finding that the contractor is indebted to the Government.

48 C.F.R. § 33.211(a).

*sion on either claim would suffice to confer upon this court jurisdiction over both* ).

This case is admittedly different. The CO did not issue a final decision on plaintiff's claims. The Contract Disputes Act ("CDA") treats the absence of a timely CO decision as a denial of the contractor's claims. 41 U.S.C. § 605(c)(5) (1988). Thus, plaintiff's claims are deemed denied. Although in *Placeway* the CO's denial of the contractor's claim was expressed in a written decision, the Federal Circuit's reasoning was based not on the form of the denial, but on the logical relationship between the two claims. The court holds that the CO's constructive denial of KSA's claim for release of the retainage was logically equivalent to granting the Government's claim to keep the retainage.

32 Fed.Cl. at 663–64 (emphasis added) (alterations in original).

In determining whether contractor and government claims are "mirror images," the court must consider whether the claims rest on the "same operative facts" and whether the contracting officer considered both claims when issuing a decision on one. *Blinderman Constr. Co. v. United States,* 39 Fed.Cl. 529, 558 (1997). The result of the "mirror image" analytical framework is that when either the government's or the contractor's claim, based on the same facts, has been the subject of a contracting officer's final decision, the contracting officer has considered both claims and, therefore, this court should be able to consider both claims at the same time. To do otherwise would be to cause significant inefficiency and duplicitous litigation at variance with the interests of judicial economy.

In *Placeway,* the contractor sued in the United States Court of Federal Claims for the balance due on a contract, although the contracting officer had not issued a final decision on the contractor's uncertified claim. *Placeway Constr. Co. v. United States,* 920 F.2d at 906–07. The contracting officer had issued a final decision granting the government's claim for setoff. *Id.* at 906. The United States Court of Appeals for the Federal Circuit held that the contracting officer's final decision on the government's claim for setoff vested jurisdiction in the Claims Court over both the contractor's appeal of the government's claim for setoff, as well as over the contractor's affirmative claim for the balance due on the contract. *Id.* at 905, 907.

In the instant case, both the contractor's and the government's claims are based on Hamilton's partial performance under the 18505 contract. These claims should be considered "mirror image" claims because Hamilton's claim is based on the premise that its performance was sufficient, while the government's claim is based on the premise that Hamilton's performance was deficient. The contracting officer's decision granting the government's claim of setoff was logically equivalent to denying Hamilton's claim for payment under the contract. See *Kit–San–Azusa v. United States,* 32 Fed.Cl. at 664. The facts of the plaintiff's case also are consistent with those in *Placeway* and meet the criteria for application of the "mirror image" theory. The contracting officer has issued a final decision on the government's claim for setoff, because the October 17, 1997 letter determines both liability and damages on the claim asserted by the government. Accordingly, the contracting officer's final decision on the government's claim for setoff functioned as a constructive denial of Hamilton's "mirror image" claim for payment under the contract. The United States Court of Federal Claims, therefore, has jurisdiction to hear both claims, even in the absence of an explicit final contracting officer's decision on Hamilton's claim. See *Placeway Constr. Co. v. United States,* 920 F.2d at 907; *Kit–San–Azusa, J.V. v. United States,* 32 Fed.Cl. at 663–64.

## CONCLUSION

The Contract Disputes Act of 1978 requires that a contractor receive a final contracting officer's decision before filing suit in the United States Court of Federal Claims. Hamilton's December 10, 1997 claim has not been the subject of an explicit denial from the contracting officer, nor can the December 10th claim be deemed denied because the contracting officer had only thirty-five days to evaluate the claim before Hamilton filed suit in the United States Court of Federal Claims. Even though they were pending for

more than sixty days before plaintiff filed the above-captioned case, plaintiff's October 22, 1997 and November 13, 1997 letters, read together or in isolation, do not constitute claims under the CDA because they were not certified and they did not demand a sum certain from the government. Because, however, the contracting officer issued a final decision on the government's claim for setoff, and because Hamilton's affirmative claim can be considered the "mirror image" of the government's claim for setoff, the contracting officer's final decision on the government's claim for setoff served as a constructive denial of plaintiff's claim, and this court has jurisdiction to hear the claim. The defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction is, therefore, **DENIED**.

**IT IS SO ORDERED.**